Thomas C. HALL, Appellant,

v.

MONTGOMERY WARD & COMPANY,
Appellee.

No. 2–57921.

Supreme Court of Iowa.

April 20, 1977.

Rehearing Denied May 19, 1977.

Fulton, Frerichs & Nutting, Waterloo, and Jacobsen, Price & Correll, Cedar Falls, for appellant.

Beecher, Beecher, Holmes & Rathert, by John W. Rathert and Jon C. Fister, Waterloo, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves a jury award of damages in an action by plaintiff Thomas C. Hall against defendant Montgomery Ward & Company for mental anguish caused by threatening language by Wards' representatives. We view the evidence in the light most favorable to the verdict. *Jacobson v. Benson Motors, Inc.*, 216 N.W.2d 396 (Iowa).

Hall, a borderline mental retardate with an intelligence quotient of 69, worked as a maintenance man in Wards' store at Cedar Falls, Iowa. He "borrowed" Wards' floor scrubber to moonlight by cleaning tavern floors, and also took cleaning material for the scrubber. He testified he did not take other items.

A security officer of Wards came from Chicago and, with the local store manager, interrogated Hall in the manager's office. The officer threatened Hall with jail, among other statements, and emerged from the interrogation with four documents signed by Hall. A clinical psychologist testified that some of the words in the documents were beyond Hall's comprehension and that Hall would probably sign anything in a stressful situation to extricate himself. Hall testified he signed the documents because of the threats of jail. The documents were a consent that Wards' representatives could detain and interview Hall on company business as long as they deemed necessary, a list of items Hall allegedly took from the store (such as shorts, knife, belt, brush), a confession to the theft of store merchandise worth $5000, and a promissory note to Wards for $5000. The store manager testified the items listed in the second document as stolen would come to $25 to $35 but the list did not cover everything and the figure $5000 was Hall's estimate.

Hall testified to his mental anguish from the incident. He stated several times that he had recurring dreams from the incident and that the incident affected his relationship with his family. The psychologist testified that Hall reacted as though the incident was "the end of the world," and Wards' officer testified he had to assure Hall at the conclusion of the interrogation that the situation was not the end of the world. Hall did not introduce evidence of

physical injury or of financial loss or expense.

Hall testified regarding the pitifully small amount of property possessed by himself and his wife, as tending to show he did not have the property Wards contended he stole. Over Wards' objection of irrelevant, immaterial, and prejudicial, overruled by the trial court, Hall also introduced Wards' balance sheet and operating statement showing inter alia assets of $1,964,822,000 and net annual sales of $2,640,122,000.

The trial court overruled a motion for directed verdict by Wards. The jury found for Hall and awarded him $12,500 actual and $50,000 exemplary damages.

Wards moved for judgment notwithstanding verdict and alternatively for a new trial. The trial court overruled the former motion but sustained the latter one on the ground that the court erred in overruling Wards' objection to admission of the exhibit containing the balance sheet and operating statement which, according to the court, Hall's attorney used to make a "devastating" jury argument.

Hall appealed from the new trial award. Wards cross appealed from the court's failure to sustain its motions for directed verdict and for judgment notwithstanding verdict. The appeal and cross appeal present several issues.

I. One issue relates to the legal basis for Hall's tort claim. In the trial court Hall did not predicate his case on a common-law tort, nor does he here. See *Barnett v. Collection Service Co.*, 214 Iowa 1303, 242 N.W. 25; *Curnett v. Wolf*, 244 Iowa 683, 57 N.W.2d 915; *Amsden v. Grinnell Mut. Reinsurance Co.*, 203 N.W.2d 252 (Iowa); *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa); *Jarvis v. Montgomery Ward & Co.*, 525 F.2d 1267 (8th Cir.); *Janvier v. Sweeney*, [1919] 2 K.B. 316; Prosser, Law of Torts, § 12 at 56–57 (4th ed.); Restatement, Torts 2d § 46; 86 C.J.S. Threats & Unlawful Communications § 27 at 808; Annos. 106 A.L.R. 1453, 15 A.L.R.2d 108, 64 A.L.R.2d 100. Instead he planted his feet squarely on our criminal statute on malicious threats, § 720.1, Code 1973:

If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall be imprisoned in the penitentiary not more than five years or be fined not exceeding one thousand dollars, or be imprisoned in the county jail not exceeding one year, or both such fine and imprisonment.

■ This statute contains no provision for civil relief. The rule generally throughout the country is that a criminal statute gives rise to a civil cause of action "if and only if that appears by express terms or by clear implication to have been the legislative intent." 1 Am.Jur.2d Actions § 57 at 589. See also 1 C.J.S. Actions § 12 at 996. We are not dealing here with statutory standards of conduct which are applied in common-law tort actions for negligence; we are dealing instead with the foundation itself of the action. Cf. *Hansen v. Kemmish*, 201 Iowa 1008, 208 N.W. 277.

■ In Iowa we have a statute which appears to have been enacted to abolish the ancient common-law rule that civil wrongs are merged in felonies. Code 1973, § 611.-21. See *Boston & W. R.R. v. Dana*, 1 Gray 83 (Mass.). The statute provides:

The right of civil remedy is not merged in a public offense, but may in all cases be enforced independently of and in addition to the punishment of the latter.

This court has, however, interpreted the statute as itself providing a civil right for violation of a criminal statute. *Call v. Larabee*, 60 Iowa 212, 214, 14 N.W. 237, 238 ("Civil remedies may in all cases be enforced for injuries sustained by reason of public offenses"); *Jones v. Register & Leader Co.*, 177 Iowa 144, 158 N.W. 571; *Haines v. Welker & Co.*, 182 Iowa 431, 435, 165 N.W. 1027, 1028 ("The verdict of necessity, declares that the statute [punishing certain transfers of notes] had been violat-

ed by the defendants. . . . Starting then, with the proposition that the defendants violated this statute *that of itself gave the plaintiff a cause of action*"—citing *Call* and *Jones* decisions, italics added).

We thus hold that violation of § 720.1 itself gave Hall a civil cause of action in the present case. By so holding we do not imply that Hall did not have to be within the protection of the statute or that his harm did not have to flow from the statutorily proscribed conduct. Prosser, Law of Torts, § 36 at 192–197 (4th ed.). By his evidence Hall satisfied these requirements.

II. Wards counterclaimed on Hall's note for $5000, and Hall defended on a basis similar to the one he employed for his damage claim—violation of § 720.1. This raises the interesting question whether violation of a criminal statute may be asserted not only as a basis for an affirmative civil claim but as a civil defense as well. We need not decide the question. Essentially Hall alleged in response to the counterclaim that he executed the note under compulsion, and duress is of course a recognized common-law defense to an action on a note as between the original parties. 11 Am.Jur.2d Bills & Notes § 725 at 808; 10 C.J.S. Bills & Notes § 492 at 1083. Hall's evidence thus developed a defense for jury consideration as to Wards' counterclaim. See Code 1973, § 554.1103. We are aware of statements regarding guilt of the threatened person, in *Kennedy v. Roberts,* 105 Iowa 521, 75 N.W. 363. We hold however that the better rule is as stated in Restatement, Contracts, § 493, Comment *d.* See also Restatement, Contracts 2d § 318, Comment *c* (Tent. Draft 11), and *State v. Debolt,* infra, 104 Iowa 105, 73 N.W. 499.

III. Hall contends that the trial court erred in granting a new trial for admitting Wards' balance sheet and operating statement into evidence. The rule in this jurisdiction has been that with certain exceptions not involved here, a defendant's pecuniary condition may not be shown although the plaintiff asks smart money. *Guengerech v. Smith,* 34 Iowa 348; *Bailey v. Bailey,*

94 Iowa 598, 63 N.W. 341. This view has the support of a few courts, which state that if pecuniary condition is shown the fact finder will tend to get off on the relative poverty or affluence of the parties; despite trial-court instructions to juries, the issues of liability and damages will become intermixed. *Wilson v. McLendon,* 225 Ga. 119, 166 S.E.2d 345; *Givens v. Berkley,* 108 Ky. 236, 56 S.W. 158; *Texas Public Utilities Corp. v. Edwards,* 99 S.W.2d 420 (Tex.Civ. App.).

The great weight of authority today, however, holds the other way where the plaintiff seeks and the evidence supports exemplary damages. Many of the decisions are gathered in Annotations, 16 A.L.R. 838 and 123 A.L.R. 1136. See also Jones on Evidence, § 4:50 at 486 (6th ed.); 22 Am. Jur.2d Damages § 322 at 422; 25 C.J.S. Damages § 126 at 1168–1170. The rationale employed in these decisions is that the jury needs to know the extent of the defendant's holdings in order to know how large an award of damages is necessary to make him smart. E.g. *Suzore v. Rutherford,* 35 Tenn.App. 678, 684, 251 S.W.2d 129, 131 ("what would be 'smart money' to a poor man would not be, and would not serve as a deterrent, to a rich man").

We are impressed by the large number of courts which have arrived at the conclusion that generally the rule of admissibility is the better one. We are more impressed by the actual need of jurors, in connection with exemplary damages, to have evidence about the defendant's poverty or wealth. We thus overrule the *Guengerech* and *Bailey* decisions and hold that the trial court properly admitted the exhibit and erroneously sustained Wards' motion for new trial. In adopting the rule of admissibility, we caution trial courts to confine plaintiffs carefully to the proper use of such evidence—to the issue of the amount of exemplary damages which is necessary to punish the particular defendant.

IV. Wards contends that exemplary damages are not properly in this case because under § 720.1 of the Code the claim for compensatory damages is itself founded

on malice; therefore to allow exemplary damages in addition based on the malice would amount to double recovery, citing *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157.

■ The compensatory damages, however, are for mental anguish, while the exemplary damages constitute punishment. We rejected the contention Wards now asserts in *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa). We adhere to that decision.

V. Wards urges errors in the trial court's jury instructions on several matters which were preserved for review and which we have not already touched upon.

■ (a) Wards excepted to Instruction 9. That instruction told the jury Wards may violate § 720.1 although Hall was guilty of stealing, and this clearly is the law. *State v. Debolt*, 104 Iowa 105, 73 N.W. 499. But Wards excepted on the ground the trial court should have added that the jury could consider Hall's guilt as bearing on Wards' motives. This too is the law. *State v. Waite*, 101 Iowa 377, 70 N.W. 596. We think however, taking the instructions altogether, *Leaders v. Dreher*, 169 N.W.2d 570 (Iowa), that this matter was adequately covered. The court permitted Wards to introduce evidence of Hall's guilt and in Instruction 14 explained Wards' rights of investigation, discharge, and restitution in connection with theft.

■ (b) Wards objected to Instructions 10, 11, and 12 on the ground those instructions did not direct that the issue of liability (as distinguished from damages) be determined by an objective standard. Wards appears to confuse statutory liability under § 720.1 with common-law liability for outrageous conduct. The present case is under § 720.1 which establishes its own elements. See II Iowa Uniform Jury Instructions, No. 533.2 (1970). Whether a defendant's conduct in a common-law action is outrageous is determined by an objective standard unless the defendant knew of the plaintiff's peculiar susceptibility. Prosser, Torts, § 12 at 58, 59 (4th ed.); Restatement, Torts 2d § 46, Comment *f*. We have some doubt as to the applicability of the objective

standard to cases under § 720.1, at least where as here the threat is to accuse the plaintiff of a crime. But we do not decide the question, for the trial court adequately covered the subject of Wards' objection in Instruction 13. *Berhow v. Kroack*, 195 N.W.2d 379 (Iowa).

(c) Wards excepted to Instruction 12, but the instruction appears to be a proper one relative to ascertaining state of mind.

(d) Wards objected to Instruction 14 because it did not deal with Wards' right to detain Hall. We agree with the trial court, however, that the case was not predicated or submitted on detention and that the instruction adequately dealt with Wards' rights insofar as they were involved.

■ (e) Wards excepted to Instruction 18 on damages because that instruction did not tell the jury subjective conditions could not be considered on liability as opposed to damages. We have already pointed out, however, that objectivity as to liability was covered in Instruction 13. Instructions are to be read together. *Leaders v. Dreher*, 169 N.W.2d 570 (Iowa).

■ (f) Wards excepted to Instruction 19 because the evidence did not support an award of exemplary damages. Viewed in its most favorable light to Hall, we think the evidence generated a jury question on such damages. *Northrup v. Miles Homes of Iowa*, 204 N.W.2d 850 (Iowa).

VI. Wards argues that the awards of $12,500 as compensatory damages and $50,000 as punitive damages are excessive and the result of passion and prejudice.

■ Considering the evidence on the extent of plaintiff's emotional distress, which was considerably less than in some cases, the compensatory damage award is very large. We have set out the applicable legal principles several times. E.g. *Giltner v. Stark*, 219 N.W.2d 700 (Iowa); *Wiles v. Myerly*, 210 N.W.2d 619 (Iowa); *Pagitt v. City of Keokuk*, 206 N.W.2d 700 (Iowa); *Northrup v. Miles Homes of Iowa*, 204 N.W.2d 850 (Iowa). The limited evidence on distress and the large size of the com-

pensatory award raise the question whether the jury was erroneously influenced on compensatory damages by Wards' magnitude. The question on excessiveness is close, but upon examination of the evidence and the applicable legal principles, we conclude that the jury's finding on the amount of damages from emotional distress should stand.

As to the exemplary damages of $50,000, again the applicable legal principles are well understood. *Northrup v. Miles Homes of Iowa,* supra; *Syester v. Banta,* 257 Iowa 613, 133 N.W.2d 666; *Amos v. Prom,* 115 F.Supp. 127 (N.D.Iowa). Wards' security officer admitted he used his knowledge of the psychology of testing. Hall is borderline retarded and must have been putty in the officer's hands. The testimony shows the officer referred to Hall's religion and his mother, as well as to criminal prosecution, and emerged with the documents he wanted including Hall's note for $5000.

The jury arguments on exemplary damages, though forceful, do not appear improper. The dollar having shrunk as it has and Wards being of the size that it is, the jury may well have decided that punitive damages of $50,000 were necessary in order to teach Wards a lesson. Upon consideration of the entire record and the applicable legal principles, we conclude that although the award is very large, we should not interfere with the amount the jury found Wards should pay as exemplary damages.

VII. Wards objects because the judgment carries statutory interest, whereas interest is not allowable on punitive damages. *Dunshee v. Standard Oil Co.,* 152 Iowa 618, 132 N.W. 371. Wards is correct that interest does not run on punitive damages before judgment. It does however run on the judgment itself. Code 1973, §§ 535.-3, 625.21. The latter is what we have here.

VIII. Wards contends finally that the trial court exercised its discretion to grant new trial in the interest of justice, rule 344(f)(3) and (4), Rules of Civil Procedure, based on misuse by Hall's attorney before the jury of the exhibit on Wards' assets and sales. We do not find such misuse of the

exhibit, but some language in the court's ruling on the motions for new trial and judgment notwithstanding lends credence to Wards' contention. We have scrutinized the motions and the ruling, however, and conclude that the court actually rested its new trial grant on its admission in evidence of the exhibit in question, which we have now held was not error. Thus the foundation for the new trial grant does not exist. See *Lappe v. Blocker,* 220 N.W.2d 570 (Iowa).

The trial court should have overruled Wards' motion for new trial and it properly overruled Wards' motion for judgment notwithstanding verdict. Its rulings at trial were correct in the first instance. We thus return the case to district court for reinstatement of the verdict and judgment thereon.

REVERSED AND REMANDED.