STATE of Iowa, Appellee,

v.

Terry Eugene SCHUTZ, Appellant.

No. 97–387.

Supreme Court of Iowa.

May 28, 1998.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, John Sarcone, County Attorney, and Odell McGhee, Assistant County Attorney, for appellee.

ANDREASEN, Justice.

Terry Eugene Schutz was charged and convicted of both first and second-degree robbery in violation of Iowa Code section 711.2 (1995). He was sentenced to serve concurrent sentences of twenty-five years and ten years. Additionally, he is required to serve eighty-five percent of his total sentence before he is eligible for parole as provided by Iowa Code sections 902.12 and 903A.2.

On appeal, Schutz urges the district court erred by refusing to exercise its discretion to allow expert testimony regarding eye witness identification. We reverse and remand.

I. *Background Facts and Proceedings.*

The McDonald's fast food restaurant in Altoona, Iowa was robbed on the evening of August 8, 1996. The robbery occurred while the restaurant was full of customers. The robber gave the manager on duty a note stating in substance that "this is a robbery, I have a gun, take me to the office, and give me your money." The manager took the man to the office, opened the safe, and gave him the money. Another McDonald's employee, who knew something was wrong when the man was allowed into the office, called 911 and reported a robbery was in progress. Before the police arrived, the robber went out the back door. He jumped into a car that was stopped at the drive-thru window and told the driver to get out. The driver observed the barrel of a handgun and immediately vacated his vehicle.

When law officers arrived they talked to many witnesses about what they had seen. A composite artist's drawing of the robber was prepared and broadcast on television. Several days later an investigative officer prepared a photographic lineup and showed it to several McDonald's employees who had been present at the time of the robbery.

Arrest and search warrants were issued. Schutz was taken into custody and his home was searched for physical evidence relating to the robbery. No evidence was found. The stolen car was recovered in a parking lot in Des Moines approximately ten days after the robbery.

Prior to trial Schutz moved for a continuance so that he could secure an expert to testify as to the reliability of eye witness testimony. District Judge Richard G. Blane, II, relying on *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979), denied the motion because "such testimony is not permitted in Iowa."

At trial the State called six employees of McDonald's who were working at the time of the robbery. These witnesses testified as to the circumstances surrounding the robbery and the identification of the perpetrator. The owner and operator of the vehicle that was stolen testified he had observed a gun held by the robber but he could not identify the person holding it. The State did not offer any evidence, other than eye witness identification evidence, linking Schutz to the robbery. Schutz called an alibi witness who testified she was with him at her home in Des Moines on the evening of the robbery.

The jury found Schutz guilty of the offenses charged. Prior to sentencing Schutz filed a motion for a new trial. He urged the court's refusal to allow him to produce an expert to testify as to eye witness identification was error and that *Galloway* should be reversed. The trial judge, Joel D. Novak, denied the motion. He believed *Galloway* was good law and "if there is going to be a change, we will let them [the appellate court] change that law."

II. *Error Preservation.*

■ Schutz did not make an offer of proof as to the expert's qualifications and the specific evidence he might have presented. The State argues an offer of proof was required and without such offer the issue was waived. We have said an offer of proof is necessary to

preserve error. *State v. Harrington*, 349 N.W.2d 758, 760 (Iowa 1984). Underlying this requirement is the premise that in ordinary circumstances in the absence of an offer of proof we lack an adequate record to review the ruling. *State v. Hahn*, 259 N.W.2d 753, 759 (Iowa 1977). However, in this case the record adequately demonstrates the issue raised. The trial court understood *Galloway* to be a per se rule of exclusion. Under these special circumstances, an offer of proof as to the proposed testimony would be frivolous. Both Judge Blane and Judge Novak understood and addressed the issue raised.

### III. *Expert Opinion.*

 Iowa Rule of Evidence 702 sets the standard for admission of expert testimony.

> We have a liberal tradition in the admission of opinion evidence under this rule. The trend of our cases ... has been towards broadening the scope of admissibility of expert testimony. The question is whether the proffered evidence will assist the jury in resolving an issue. That determination necessarily requires a threshold finding of reliability because unreliable evidence cannot assist a trier of fact.... The district court has discretion to determine the admissibility of expert opinion testimony and reversal is justified only when the court has abused its discretion.

*State v. Buller*, 517 N.W.2d 711, 713 (Iowa 1994) (citations and quotation marks omitted).

### IV. *Galloway—Per Se Rule.*

 *Galloway* was decided in February 1979. One member of the court joined the opinion; six members joined the special concurrence. In the opinion of the court, the admissibility of expert testimony relating to the accuracy of eye witness identification rests within the sound discretion of the trial court. The special concurrence rejected discretionary admission of such evidence. The special concurrence stated:

> The first question which ought to be addressed is whether any ... opinion testimony should be admitted over the State's standing objection that the accuracy of eye witness identification is not a proper subject of expert testimony....

> The commentators urge that experts ... should be permitted to testify in order to demonstrate the general unreliability of the memory of identification witnesses....

> However, research has produced not a single appellate decision in which such expert testimony was held admissible or its exclusion held to be an abuse of discretion....

> The predominate rationale for excluding such testimony which emerges from these cases is that the subject of the opinion offered is not beyond the knowledge and experience of a juror....

> Expert opinion testimony is admissible if it will aid the jury in some factual issue in the case....

> Explanation of the scientifically identified mechanisms which bring about memory decay may be of academic interest, but it is of little aid to the jury in judging reliability of the particular eye witness identification before them....

> This court and the public generally have been gravely concerned with the ever expanding expense and time involved in litigation. We should be slow to approve a rule which would inject another group of expensive forensic experts into an area historically reserved as the jury's domain.

*Galloway*, 275 N.W.2d at 740–42.

Five years after *Galloway*, the Supreme Court of California decided *People v. McDonald*, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984). In *McDonald*, the court held it was an abuse of discretion for the trial court to exclude expert testimony as to various psychological factors that may affect the reliability of eye witness testimony under the particular circumstances. *McDonald*, 208 Cal.Rptr. at 252, 690 P.2d at 726. The court identified five treatises that had recently been published on eye witness identification. The court stated:

> Indeed, in 1984 two leading researchers estimated that on this topic "over 85% of the entire published literature has surfaced since 1978." The consistency of the result of these studies is impressive, and the

courts can no longer remain oblivious to their implications for the administration of justice.

*Id.* 208 Cal.Rptr. at 245, 690 P.2d at 718 (citations omitted).

The court concluded that although jurors may not be totally unaware of psychological factors bearing on eye witness identification, the body of information now available on these matters was "sufficiently beyond common experience" that in appropriate cases expert opinion could assist the trier of fact. *Id.* 208 Cal.Rptr. at 248, 690 P.2d at 721.

The California court identified six published opinions where expert testimony on eye witness identification was admitted at trial in various contexts. *Id.* 208 Cal.Rptr. 236, 690 P.2d at 718 n. 10. The court stated:

Of course, the virtual unanimity of appellate decisions on the topic may be misleading. Expert testimony on eye witness identification is usually offered by the defendant. In cases in which the testimony is *admitted*, the issue will not arise on appeal: if the defendant is convicted, he cannot complain of the admission of his own evidence; and if he is acquitted, no appeal is possible in any event. It follows that appellate courts ordinarily confront the issue only when the testimony has been *excluded;* and in all such cases appellate courts tend to affirm, because of the deference traditionally accorded to discretionary rulings of the trial courts.

*Id.*

The court suggested it did not intend to "open the gates" to a flood of expert evidence on the subject. However,

[w]hen an eye witness identification of the defendant is a key element of the prosecution's case but it is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will

ordinarily be error to exclude that testimony.

*Id.* 208 Cal.Rptr. at 253, 690 P.2d at 727.

Our research revealed a number of appellate decisions where expert testimony was admissible or its exclusion was held to be an abuse of discretion. As examples, the following cases held the exclusion of expert opinion to be an abuse of discretion: *United States v. Stevens,* 935 F.2d 1380 (3d Cir.1991); *United States v. Sebetich,* 776 F.2d 412 (3d Cir.1985); *United States v. Downing,* 753 F.2d 1224 (3d Cir.1985); *United States v. Smith,* 736 F.2d 1103 (6th Cir.1984); *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983); *McDonald,* 208 Cal.Rptr. 236, 690 P.2d at 709; *People v. Campbell,* 847 P.2d 228 (Colo.Ct.App.1992); *Echavarria v. State,* 108 Nev. 734, 839 P.2d 589 (1992); and *State v. Whaley,* 305 S.C. 138, 406 S.E.2d 369 (1991).

In the following cases, expert testimony on eye witness identification was held admissible in part: *United States v. Jordan,* 924 F.Supp. 443 (W.D.N.Y.1996); *People v. Lewis,* 137 Misc.2d 84, 520 N.Y.S.2d 125 (N.Y.Co. Ct.1987); *State v. Fontaine,* 382 N.W.2d 374 (N.D.1986); *State v. Hill,* 463 N.W.2d 674 (S.D.1990); *Hampton v. State,* 92 Wis.2d 450, 285 N.W.2d 868 (1979).

We found no state appellate court other than Iowa with a per se rule of exclusion of expert testimony regarding eye witness identification. *See generally* Gregory G. Sarnow, Annotation, *Admissibility, at Criminal Prosecution, of Expert Testimony on Reliability of Eyewitness Testimony,* 46 A.L.R.4th 1947 (1986).

V. *Conclusion.*

We conclude the per se rule adopted by *Galloway* must be reversed. The exclusion of expert testimony is a matter committed to the sound discretion of the trial court and we will reverse only for an abuse of that discretion. Although the district court could not have anticipated our holding in this matter, it was error to apply the per se rule of exclusion. We reverse and remand to the district court for a new trial.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who dissents, and is joined by McGIVERIN, C.J.

CARTER, Justice (dissenting).

I dissent. The rule approved by a majority of this court in *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979), excluding expert testimony concerning the reliability of eye-witness identification was sound and should not now be abandoned.

One of the reasons expressed by this court's majority for excluding such evidence was:

> Explanation of the scientifically identified mechanisms which bring about memory decay may be of academic interest, but it is of little aid to the jury in judging reliability of the particular eye witness identification before them....

*Galloway*, 275 N.W.2d at 741. The *Galloway* majority also expressed the view that the subject of such opinions is not beyond the knowledge and experience of the typical trial juror. *Id.*

These observations are valid grounds for excluding this category of expert testimony irrespective of the facts and circumstances of a particular case. I would affirm the district court.

McGIVERIN, C.J., joins this dissent.